IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PRO-MOLD, INC., a Utah corporation<br><br>Plaintiff,<br><br>vs.<br><br>ESI EXTRUSION SERVICES, INC.,<br><br>Defendant, | MEMORANDUM OPINION AND ORDER<br><br>Case No. 1:11-CV-00145 |

This matter is before the court on a motion for partial summary judgment filed by defendant ESI Extrusion Services, Inc. ("ESI"). (Dkt. No. 33, Def.s Mot. for Partial Summ. J.) A hearing on the motion was held on May 28, 2013. Plaintiff Pro-Mold, Inc. ("Pro-Mold") was represented by Mica McKinney and Greg S. Ericksen. Defendant ESI was represented by Sam Meziani and Spencer H. Reed. Before the hearing, the court considered briefs and memoranda submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now, being fully advised, the court issues the following Memorandum Opinion and Order.

## BACKGROUND

Pro-Mold is a Utah corporation that manufactures sprinkler irrigation products. (Dkt. No.

1, Compl. at ¶2.) ESI Extrusion Services, Inc. is an Ohio corporation which designs, manufactures, and fabricates automated machines. (Id. at ¶¶6-8.) In 2009, Pro-Mold and ESI negotiated an agreement for ESI to design, fabricate, sell, and deliver an automated machine for Pro-Mold. The parties agreed that the machine would cut and roll plastic pipe into coils of predetermined lengths and place strapping around the coiled pipe. (Id. at ¶¶14.) On August 17, 2009, ESI submitted an offer to Pro-Mold in the form of a revised quote which stated that ESI would provide Pro-Mold with a machine that would cut, roll, and secure certain types of pipe at a specified rate. (Id. at ¶16; Dkt. No. 31, Second Decl. of Declan J Smith, Ex. A, Revised Quotation #09-10014C (the "Quote").) The purchase price for the machine was to be $142,900.00. (Compl. at ¶17; Second Decl. of Declan J. Smith, Ex. A, Quote.) The Quote also stated that ESI would provide a piece of equipment called a 3" x 36" MD, Servo Driven, Smooth Belt Puller and Pneumatic Feed Belt Actuation for a purchase price of $24,975.00. (Compl. at ¶19; Second Decl. of Declan J. Smith, Ex. A, Quote.)

Pro-Mold received the Quote by email. (Second Decl. of Declan J. Smith at ¶8 & Ex. A, Quote.) ESI customarily provides purchasers with a quote which includes ESI's Standard Terms and Conditions of Sale ("Terms and Conditions") printed on the reverse side of the final page. (Second Decl. of Declan J. Smith at ¶7.) ESI's Terms and Conditions exclude claims for damages beyond the purchase price and various types of warranties.[1] However, when a customer

---

[1]The portions of the Terms and Conditions relevant to this suit are found in sections 2 and 7 of the Terms and Conditions and read as follows:

> 2)....Any terms or conditions appearing on the Buyer's purchase order or other form which are inconsistent with, or modification of, or in addition to these *STANDARD TERMS AND CONDITIONS*, shall not be binding on the Seller and shall not apply to this sale....

wants a quote delivered by email, it is ESI's regular practice to send the quote as two attachments to a single email. The first attachment includes specific provisions to the individual quote and a statement on the final page, under the heading "TERMS," which reads: "NOTE: See other side for additional terms and conditions of sale." (Id.) The second attachment is clearly labeled "ESITermsAndConditionsofSale.doc." (Id.) ESI followed this protocol when it sent the Quote to Pro-Mold, sending the email with two attachments as described above. (Second Decl. of Declan J. Smith at ¶8 & Ex. A, Quote.)

Pro-Mold responded to the Quote by issuing a purchase order in the amount of $167,875.00. (Compl. at ¶19 & Ex. B, Purchase Order.) The purchase order included text which stated that the purchase order was issued "as per quote #09-10014C." (Def.'s Mot. for Partial Summ. J. at 8; Compl., Ex. B, Purchase Order.) The purchase order also included, in fine print, the statement: "This Purchase order and supply of goods pursuant hereto is to be strictly in

---

> 7)....The foregoing warranty is in lieu of all other representations or warranties of ESI-Extrusion Services, Inc., it being recognized and agreed that *THERE ARE NO OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANT ABILITY* [sic] *OR FITNESS FOR ANY PARTICULAR PURPOSE*, applicable to the goods or services of ESI-Extrusion Services, Inc. to be provided hereunder....*IN NO EVENT* shall ESI-Extrustion Services, Inc. be liable to customer or any party claiming through customer for any consequential, incidental or other damages of any kind arising from or relating to the goods or services of ESI - Extrusion services, Inc. hereunder or any delay in providing any such goods or services, it being understood and agreed that the sole and exclusive remedy of customer for any default of ESI-Extrusion Services, Inc. shall be the repair, replacement or correction of defective goods or services under the foregoing Warranty. If, however, defects in the goods or services of ESI- Extrusion Services, Inc. hereunder cannot be remedied by such repair, replacement or correction, the responsibility of ESI-Extrusion Services, Inc. to customer shall in no event exceed the purchase price of such goods or services.

accordance with the terms and conditions printed hereon and on the reverse side hereof, all of which are made an integrate part hereof." (Compl., Ex, B, Purchase Order.) However, Pro-Mold did not provide the reverse side of the page, which was to have included Pro-Mold's terms and conditions. Along with the purchase order, Pro-Mold issued a check to ESI in the amount of $58,756.25 (35% of the purchase price) as the down payment for the two machines pursuant to the Quote. (Compl. at ¶20; Second Decl. of Declan J. Smith, Ex. A, Quote.)

Under the parties' contract, the automatic coiler machine and smooth belt puller were due for shipment by ESI to Pro-Mold on or before December 11, 2009. (Compl. at ¶24.) On February 16, 2010, Pro-Mold received the equipment referred to in the purchase order, two months after the agreed-upon date. (Id. at ¶26.) Once delivered, the automated coiler machine did not function as contemplated in the contract. It failed to function at the speed agreed upon by the parties and periodically broke down. (Id. at ¶31.) Despite the work of technicians sent by ESI to Utah and the re-fabrication and replacement of key portions of the machine, the automated coiler failed to consistently operate pursuant to the specifications outlined in the quote. (Id. at ¶¶30-33.)

Pro-Mold ultimately filed suit against ESI on September 21, 2011. (See Compl.) Pro-Mold's complaint raises six claims for relief: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) breach of implied warranties, (4) misrepresentation, (5) negligence, and (6) unjust enrichment. (Id. at ¶¶35-65.) ESI filed this motion for partial summary judgment on February 11, 2013. (See Def.'s Mot. for Partial Summ. J.)

## DISCUSSION

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit in light of the substantive law. Id. ESI contends that no such genuine issue of material fact remains in this case and that its motion for summary judgment should therefore be granted.

## I. THE CONTRACT

Because ESI contends that Pro-Mold's first three claims—for breach of contract, breach of implied covenant of good faith and fair dealing, and breach of implied warranties—are limited or precluded by ESI's Terms and Conditions, the first question to be addressed by the court is whether the Terms and Conditions control the contract between the parties. While both parties agree that they entered a contract for the manufacture of the extrusion and puller equipment (Mot. for Partial Summ. J at at 3; Dkt. No. 37, Pro-Mold's Mem. in Opp'n to Mot. for Partial Summ. J at 1), the parties disagree on whether the ESI's Terms and Conditions govern that contract. Particularly, Pro-Mold argues that the Terms and Conditions are not a controlling part of the contract for three reasons: (1) the Terms and Conditions were not part of the quote, but rather were sent in a separate and distinct document, and therefore were not included in ESI's offer accepted by Pro-Mold; (2) the Terms and Conditions were not properly incorporated by reference into the Quote, and were therefore not part of ESI's offer accepted by Pro-Mold; and

(3) even if the Terms and Conditions were a part of the Quote, or incorporated into it by reference, the parties did not agree that the Terms and Conditions governed the contract. Each of these arguments will be discussed below.

### A. The Terms and Conditions Were Not in a Separate and Distinct Document and Were Therefore Part of the Quote

While ESI contends that the Terms and Conditions were included in the Quote, Pro-Mold contends that they were contained in a separate and distinct document and, therefore, were not a part of ESI's offer. In light of the undisputed facts, the court holds that no reasonable jury could find that the Terms and Conditions were not a part of the Quote.

The parties stipulate that ESI's Quote was an offer. (Compl. at ¶16; Def.'s Mot. for Summ. J. at 7.) As explained above, ESI sent the Quote to Pro-Mold as two attachments to a single email. The third and final page of the first attachment contained a section clearly entitled "TERMS." (Second Decl. of Declan J Smith, Ex. A, Quote.) Within that section, after discussion of such items as terms of payment and shipment, the section included the statement "NOTE: See other side for additional terms and conditions of sale." (Id.) The second attachment, entitled "ESITermsAndConditionsofSale.doc" included a digital copy of the terms and conditions that would have been on the reverse side of a hard-copy version of the Quote. (Second Decl. of Declan J. Smith at ¶7 & Ex. A, Revised Quotation.) The document in the second attachment, once opened, featured the heading "*TERMS AND CONDITIONS OF SALE*." (Second Decl. of Declan J Smith, Ex. A, Quote.)

The court finds that no reasonable jury would suppose that the second attachment containing the Terms and Conditions was not clearly intended to be a part of the Quote. The

email transmitting the quote contained two attachments. While Pro-Mold argues that only the document in the first attachment should be considered the Quote, the fact that the final page of that document instructed the reader to see the reverse side of the page to see further terms and conditions of sale indicated to Pro-Mold that the Quote contained further provisions. Because electronic documents do not have reverse sides, it is reasonable that those conditions would be sent in a second attachment to the same email, as they were. Furthermore, the fact that the second attachment was entitled "ESITermsAndConditionsofSale.doc" makes it even more clear that the Terms and Conditions were a part of the Quote. No reasonable jury could suppose otherwise.

### B. Even if the Terms and Conditions Were in a Separate and Distinct Document, the Terms and Conditions are Incorporated By Reference

Even if a reasonable jury could suppose that the Terms and Conditions in the second attachment to the email containing the Quote were not considered to be a part of the Quote, the Quote incorporates the Terms and Conditions by reference such that they are a controlling part of the contract. "[P]arties may incorporate the terms of another document by reference in to their contract" provided that the reference meets three requirements. See Housing Auth. v. Snyder, 44 P.3d 724, 729 (Utah 2002) (citations omitted); Consolidated Realty Group v. Sizzling Platter, Inc., 930 P.2d 268, 273 (Utah App. 1996); 17A C.J.S. Contracts § 402. First, the incorporation of outside material must be "*clear* and unequivocal" using "specific language" that "alert[s] the non-drafting party that terms from another document are being incorporated." Housing Auth. v. Snyder, 44 P.3d at 729; see also 17A C.J.S. Contracts § 402. Second, the incorporated material must be "must be known or easily available to the contracting parties." Sizzling Platter, Inc., 930 P.2d at 273; see also

7

17A C.J.S. Contracts § 402. Finally, the party being alerted to the incorporated writing must "consent thereto." Id.; see also 17A C.J.S. Contracts § 402 (stating "[f]or an incorporation by reference to be effective, it must be clear that the parties to the agreement...assented to the incorporated terms").

The court finds that even if the email's second attachment is not technically considered part of the Quote, the Quote satisfies the necessary requirements to incorporate the Terms and Conditions by reference. ESI's quote satisfies the first requirement for incorporation by reference since the special note in the "TERMS" section on the third page of the first attachment, which reads, " NOTE: See other side for additional terms and conditions of sale," clearly and unequivocally refers to the attachment containing the Terms and Conditions. Even though the Terms and Conditions were not on the reverse side of the electronic document (because electronic documents cannot have reverse sides), the language is a clear reference to the second attachment entitled "ESITermsAndConditionsofSale.doc," which included the Terms and Conditions to which the special note referred. Therefore, ESI used specific language to clearly and unequivocally alert Pro-Mold—the non-drafting party—that the Terms and Conditions contained in the second attachment were being incorporated into the Quote. See Housing Auth. v. Snyder, 44 P.3d at 729.

The Quote satisfies the second requirement for incorporating the Terms and Conditions because the Terms and Conditions were easily available and known to Pro-Mold, since they were attached to the same email as the Quote. See Sizzling Platter, 930 P.2d at 273.

Finally, the Quote satisfies the third requirement since the terms were consented to by

Pro-Mold according to the rules governing acceptance found in the Uniform Commercial Code, which governs contracts for the sale of goods. Section 2-206(1)(a) of the U.C.C. provides that "[a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." See also, Utah Code Ann. § 70A-2-206. The parties have stipulated that the Quote constituted such an offer. (Compl. at ¶16; Def.'s Mot. for Summ. J. at 7.) Section 2-207(1) of the U.C.C. states that an offer may be accepted by "[a] definite and seasonable expression of acceptance or a written confirmation which is sent in a reasonable time." See also Utah Code Ann. § 70A-2-207.

Pro-Mold executed a purchase order, expressly requesting items "as per quote #09-10014C." Because the Terms and Conditions were clearly and unequivocally referenced and provided, Pro-Mold's purchase order requesting the items "as per" the Quote is a definite written confirmation of acceptance of, and consent to, ESI's Quote, including its Terms and Conditions. Because the purchase order and down payment were sent to ESI on the same day that ESI sent the Quote with its Terms and Conditions, the written confirmation of acceptance was sent in a reasonable time, as required by the U.C.C. and state law. See U.C.C. § 2-207(1); Utah Code Ann. § 70A-2-206. Furthermore, the fact that Pro-Mold accompanied its purchase order with the 35% down payment required by the quote is a "seasonable expression of acceptance." As will be discussed below, Pro-Mold's acceptance of ESI's Quote was unequivocal, since Pro-Mold did not offer any conflicting terms or objections. Thus, by accepting the offer as outlined in ESI's quote, which clearly referenced the Terms and Conditions in the second attachment to the email, Pro-Mold consented to the incorporation of the Terms and Conditions.

Because the Terms and Conditions were (1) referenced clearly and unequivocally with specific language alerting Pro-Mold to the incorporated terms, (2) known and easily available to Pro-Mold, and (3) consented to by Pro-Mold, the Terms and Conditions were properly incorporated by reference into the Quote and therefore control the contract, even if they are not considered a part of the contract.

### C. Pro-Mold Accepted ESI's Offer, Including the Terms and Conditions without Objecting or Offering Conflicting Forms.

Pro-Mold contends that, even if Terms and Conditions are a valid part of the Quote, or incorporated into it by reference, they do not govern the contract because the contractual forms exchanged between the parties—namely, the Quote and Pro-Mold's purchase order—contain conflicting terms. Pro-Mold cites the U.C.C. in support of its position, which states that when "clauses on confirming forms sent by both parties conflict...each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself." U.C.C. § 2-207, comment 6; Utah Code Ann. § 70A-2-207, comment 6. When such conflicts occur, the conflicting terms are considered objections pursuant to U.C.C. § 2-207(2) and "do not become a part of the contract. U.C.C. § 2-207, comment 6; Utah Code Ann. § 70A-2-207, comment 6.

Upon review of the forms exchanged between the parties, the court does not find any conflicting provisions. It is true that Pro-Mold's purchase order included a statement in fine print stating, "[t]his Purchase order and supply of goods pursuant hereto is to be strictly in accordance with the terms and conditions printed hereon and on the reverse side hereof, all of which are made an integrate part hereof." (Compl., Ex. B, Purchase Order.) However, Pro-Mold did not send a copy of the reverse side of its purchase order to ESI until the commencement of this

litigation. (Dkt. No. 38, Def.'s Reply Mem.) As a result of Pro-Mold's failure to send ESI its own terms and conditions, there were, in fact, no conflicting terms to qualify as objections that would exclude ESI's Terms and Conditions from the contract. Furthermore, in Section 2 of the Terms and Conditions, ESI addresses possible conflicting terms, stating that "[a]ny terms or conditions appearing on Buyer's purchase order or other form which are inconsistent with, or modification of, or in addition to these STANDARD TERMS AND CONDITIONS, shall not be binding on the Seller and shall not apply to this sale." (Second Decl. of Declan J. Smith, Ex. A., Quote.) Thus, ESI's Terms and Conditions contained text explicitly precluding conflicting terms. Pro-Mold had an opportunity to reject the Terms and Conditions with their exclusions of consequential damages and implied warranties. However, Pro-Mold failed to make any proper objections or put forward conflicting terms to prevent the inclusion of ESI's Terms and Conditions in the contract.

### D. The Terms and Conditions Are a Controlling Part of the Contract

The court finds that the Terms and Conditions were part of the Quote. Even if the Terms and Conditions were not considered to be contained in the Quote, the Quote properly incorporates them by reference so that they become a controlling part of the Quote. Finally Pro-Mold accepted the Quote, with its Terms and Conditions, without offering conflicting terms or objections. Therefore, as a matter of law, the court finds that the Terms and Conditions were a controlling part of the contract between ESI and Pro-Mold. Having made this determination, the court can consider the contract claims set forth in the plaintiff's complaint.

## II. BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (CLAIMS 1 AND 2)

In its complaint, Pro-Mold alleges that, as a result of ESI's alleged breach of contract (Claim 1) and alleged breach of implied covenant of good faith and fair dealing (Claim 2), it suffered damages in amounts "to be proven at trial." (Compl. at ¶¶35-43.) Such consequential damages are explicitly excluded by the Terms and Conditions of the contract between ESI and Pro-Mold. Section 7 of the Terms and Conditions provides:

> ***IN NO EVENT* shall ESI-Extrusion Services, Inc. be liable to customer or any party claiming through customer for any consequential, incidental or other damages of any kind arising from or relating to the goods or services of ESI - Extrusion services, Inc.** hereunder or any delay in providing any such goods or services, it being understood and agreed that the sole and exclusive remedy of customer for any default of ESI - Extrusion Services, Inc. shall be the repair, replacement or correction of defective goods or services under the foregoing Warranty. **If, however, defects in the goods or services of ESI- Extrusion Services, Inc. hereunder cannot be remedied by such repair, replacement or correction, the responsibility of ESI- Extrusion Services, Inc. to customer shall in no even exceed the purchase price of such goods or services.** (Emphasis added in bold).

Therefore, under the Terms and Conditions, Pro-Mold's initial remedy is repair or replacement of any alleged defects in accordance with the warranty. If Pro-Mold establishes at trial that the machinery cannot be repaired, replaced, or corrected within the warranty, the damages awarded cannot exceed the purchase price. The UCC allows for this kind of risk allocation. See U.C.C. § 2-719(1)(a) (stating that contracting parties may "limit or alter the measure of damages recoverable."); see also Monarch Nutritional Labs, Inc. v. Maximum Human Performance, Inc., 2005 U.S. Dist. LEXIS 36000, *27-28 (D. Utah) (stating that it is "standard in trade practice" to allow the "proper allocation of risk between merchants" pursuant to U.C.C. § 2-719(1)(a)).

Therefore, partial summary judgment is granted in ESI's favor as to Pro-Mold's first two

claims, limiting the award of damages to Pro-Mold to the purchase price of the failed machinery.

**III. BREACH OF IMPLIED WARRANTIES**

Pro-Mold's claim for alleged breach of implied warranties (Claim 3) is specifically precluded by the contracts Terms and Conditions. Section 7 of the Terms and Conditions states that:

> The foregoing warranty is in lieu of all other representations or warranties of ESI-Extrusion Services, Inc., it being recognized and agreed that *THERE ARE NO OTHER WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANT ABILITY* [sic] *OR FITNESS FOR ANY PARTICULAR PURPOSE*, applicable to the goods or services of ESI - Extrusion Services, Inc. to be provided hereunder.

Section 2-316 of the U.C.C. permits the disclaimer of implied warranties. However, in order "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous." U.C.C. § 2-316 (2); Utah Code Ann. § 70A-2-316(2). Additionally, in "order to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." U.C.C. § 2-316(2); Utah Code Ann. § 70A-2-316(2). A contract term is conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Utah Code Ann. § 70A-1a-201(2)(j). "Whether a term is 'conspicuous' or not is a decision for the court." Id. That statute states that the ultimate "test is whether attention can reasonably be expected to be called to [the conspicuous terms]." The statute offers the court guidance, stating that conspicuous terms include "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the

same or lesser size." Utah Code Ann. § 70A-1a-201(2)(j)(i). Conspicuous terms also include "language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text ... that call attention to the language." Utah Code Ann. § 70A-1a-201(2)(j)(ii).

The exclusion of implied warranties of merchantability and fitness included in ESI's Terms and Conditions complies with these requirements. The exclusion of the implied warranties of merchantability mentions merchantability specifically pursuant to U.C.C. § 2-316(2) and Utah Code Ann. § 70A-2-316(2). Furthermore, the exclusion is conspicuous since the section including it is set off by a heading in bold, italicized capitals which are greater in size than the surrounding text. See Utah Code Ann. § 70A-1a-201(2)(j)(i). Furthermore, the actual language excluding the implied warranties of merchantability appears in italicized capitals, set off from the rest of the paragraph. Utah Code Ann. § 70A-1a-201(2)(j)(ii).

Similarly, the language excluding the implied warranties of fitness is in writing pursuant to U.C.C. § 2-316(2) and Utah Code Ann. § 70A-2-316(2)**.** It is also conspicuous in the same manner as the exclusion of implied warranties of merchantability, in accordance with Utah Code Ann. § 70A-1a-201(2)(j). All other warranties, aside from ESI's general warranty provided in the Terms and Conditions, are similarly excluded. As a result, ESI's motion for summary judgment regarding Pro-Mold's third claim for breach of implied warranty is granted because such claims are explicitly precluded by the language of the contract as a matter of law.

### IV. MISREPRESENTATION, NEGLIGENCE, AND UNJUST ENRICHMENT (CLAIMS 4-6).

Pro-Mold stipulates that if the court finds a binding and operative contract, its claims for

negligent misrepresentation, negligence, and unjust enrichment are preempted and should be dismissed. (Pl.'s Mem. in Opp'n to Mot. for Partial Summ. J.at 12.) Because the court finds that there was a binding and operable contract covering Pro-Mold's contract claims, the court grants ESI's motion for summary judgment regarding Pro-Mold's fourth, fifth, and sixth claims for misrepresentation, negligence, and unjust enrichment as a matter of law.

## CONCLUSION

Having determined that ESI's Terms and Conditions are a controlling part of the contract between Pro-Mold and ESI, the court GRANTS ESI's motion for summary judgment. Therefore, any award of damages to Pro-Mold under the first two causes of action for breach of contract and breach of implied covenant of good faith and fair dealing are limited to the amount of the purchase price of the equipment according to ESI's general contract warranty. Pro-Mold's third cause of action for breach of implied warranties is precluded by the contract and are therefore DISMISSED. Finally, Pro-Mold's fourth, fifth, and sixth causes of action for misprepresentation, negligence, and unjust enrichment are preempted by the courts holding on the first three contract claims and are consequently DISMISSED.

IT IS SO ORDERED

DATED this 8th day of July, 2013.

_____

Dee Benson

United States District Judge